# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **DARRELL DEVINE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case number 4:06cv0068 CEJ** |
| | ) | **TCM** |
| **JAMES PURKETT,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The 28 U.S.C. § 2254 petition of Darrell Devine, a Missouri prisoner, for federal habeas corpus relief is before the undersigned United States Magistrate Judge for a review and a recommended disposition.  See 28 U.S.C. § 636(b).

### Background

In February 2000, Darrell Devine ("Petitioner") was convicted following a three-day jury trial on charges of second degree robbery for forcibly stealing a purse from Charlene Sumpter.  (Resp. Ex. D-1 at 1-2; Resp. Ex. D-2 at 206.)  Two months later, he was sentenced as a prior and persistent offender to a twenty-five year term of imprisonment. (Resp. Ex. C at 52.)

Petitioner appealed on the grounds that the trial court had erred in (1) denying his motion in limine to exclude testimony from two police officers about statements made by Paul West and Terry Atkins, two men Petitioner had been with the night of the robbery, during their investigation; (2) denying his motion for judgment of acquittal because the

State had failed to prove each element of the crime beyond a reasonable doubt; (3) sustaining the State's objections to questions by trial counsel of a witness, James Tucker,[1] about whether he had been shown a photographic lineup, such questions being relevant to the credibility of a police detective; (4) admitting records of calls from Ms. Sumpter's cell phone, which had been in her purse, because the first two numbers on that record had been removed or redacted by the police department; and (5) denying his motion in limine to suppress Ms. Sumpter's identification based on an impermissibly suggestive lineup. (Resp. Ex. F at 9-13.)

Evidence adduced at trial had included the following. At approximately 11:40 one August night, Ms. Sumpter left a bar she had been at, Ethyl's Bar. (Resp. Ex. A-2 at 234.) A man approached her, asked what time it was, and then snatched her purse, with a cell phone and bank book inside, out of her hand. (Id. at 244, 246-47.) The area was lit, and she had an opportunity to view his face for approximately thirty seconds. (Id. at 244-45, 248.) The man got into a waiting car, a dark blue Pontiac Bonneville with temporary tags, with two other men inside. (Id. at 246, 247.) The car then drove off. (Id. at 246.)

A few months later, in November, Ms. Sumpter was asked to view a photographic lineup. (Id. at 249.) Before she testified further, trial counsel renewed objections to the lineup that had earlier been addressed, and overruled, in a motion to suppress her identification. (Id.) Those objections included that the lineup was suggestive because it

_____

[1]Mr. Tucker had been at the bar that Ms. Sumpter was at the night of the robbery, had been confronted by the robber and another man shortly before the robbery, and had chased the automobile in which the robber drove away. (Id.at 7.)

- 2 -

did not include photographs of the two men with Petitioner that night and that the photographs that were included did not match the description given by Ms. Sumpter the night of the robbery. (Id. at 250-51.) The renewed objections were overruled. (Id. at 251-52.) Ms. Sumpter identified in court the photograph that she selected. (Id. at 252.) She was "very sure" that it was of her assailant, Petitioner. (Id. at 253-54.) Detective Morrell did not tell her who to pick. (Id. at 299.)

Police detective Derek Myers viewed a surveillance tape of the bar from that night. (Id. at 344.) Two men came in the bar and then left before Ms. Sumpter. (Id. at 348-49.) Those men were Terry Atkins and Paul West. (Id) Another witness testified that he had recently sold a blue Pontiac Bonneville to Petitioner and Karen Riley. (Id. at 356.)

Police detective Richard Morrell testified that phone records of calls made from Ms. Sumpter's cell phone after the robbery included one to the house of Karen Riley. (Id. at 364.) He went to house and saw a blue Pontiac parked in the driveway. (Id. at 365.) After speaking with Mr. Atkins and Mr. West, he spoke with Petitioner. (Id.at 371.) When interviewed, Petitioner had first denied having been at Ethyl's more recently than the past few months. (Id. at 378-79.) He had drunk beer with Mr. Atkins and Mr. West and drove around with them a few months before. (Id. at 380.) After being told that the two men had indicated that they were with him that night in August and that he had robbed Ms. Sumpter, Petitioner stated that he remembered pulling into the parking lot, but had blacked out from drinking and could not remember anything else. (Id. at 381.) He later stated that he knew things would not go his way if he was convicted because he had been

in prison three times before; he wanted to speak with a prosecutor before he admitted anything. (Id. at 384, 386-87.) Detective Morrell showed Ms. Sumpter a photographic lineup. (Id. at 391.) The selection of which photographs to include in the lineup was done by computer. (Id. at 392.) The computer picked out images similar in build and description to the person named, i.e., Petitioner. (Id. at 392.) Ms. Sumpter looked at photographs one and five, said it was between those two, and, after he asked her to be absolutely sure, she selected number five after further study. (Id. at 394.)

Called as a witness for Petitioner, Mr. Atkins testified that he and Mr. West went into the bar that night to use the restroom. (Id. at 446-47.) When they left, he saw Petitioner talking with a white woman, the same one whose purse was stolen. (Id. at 450.) On cross-examination, he confirmed that he had told Detective Morrell that Petitioner was outside talking with a white woman when he and Mr. West left the bar and that a short time later he saw Petitioner knock a woman to the ground and come running back to the car with a purse, telling them to go. (Id. at 452.)

James Tucker testified that he was standing in the bar parking lot that night talking with a friend when they were approached by two black men. (Resp. Ex. A-3 at 472, 484.) After the two men spoke with him, they went up to bar front door. (Id. at 485.) He heard a woman scream in the parking lot. (Id.) He ran toward the scream and saw a car drive away with two black men in it, both in the front seat. (Id. at 488-89.) He went back to the woman and told people in the bar to call the police. (Id. at 490-91.)

At one point during Mr. Tucker's testimony, Petitioner's trial counsel broached the subject of whether he had been asked to view a photographic lineup. (Id. at 493.) They[2] wanted to impeach earlier testimony by Detective Morrell that he had not shown Mr. Tucker a photographic lineup and had not otherwise asked him to identify Petitioner. (Resp. Ex. A-2 at 427; Resp. Ex. A-3 at 493.) The court refused to allow the questions, reasoning that whether Mr. Tucker was or was not shown a photographic lineup went to whether there were inconsistent statements and not to impeachment. (Id. at 496.) The court noted that Detective Morrell had not contended that an identification had been made and the evidence was consistent that Mr. Tucker had not and could not identify Ms. Sumpter's assailant. (Id.)

While Petitioner's appeal was pending and before he filed his appellate opening brief, Mr. Joe Adams interviewed Ms. Sumpter in December 2001. (Resp. Ex. I at 84, 127) In February, he filed his opening brief. (State v. Devine, No. ED79476, https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited October 30, 2008)). After the State filed its brief, Petitioner moved in May 2002 to remand his appeal for an evidentiary hearing on the question whether the police department had failed to disclose tape recorded conversations and on the issue of Ms. Sumpter having said during an interview that she was unable to identify the man who took her purse until a police officer pointed out Petitioner's photograph. (Resp. Ex. E.) Attached to his motion was the February 2002 affidavit of Joe Adams that Ms. Sumpter had told him that Detective

_____

[2]Petitioner was represented at trial by two attorneys.

Morrell had pointed to the photograph of Petitioner and said that he was the man who had robbed her. (Id.) Affidavits of Mary Rollin, David Stock, and Mary Stock were also attached. (Id.) They each said that they were present during the interview. (Id.) Mary Rollin averred that Ms. Sumpter had said that she was not able to identify the person who took her purse. (Id.) David Stock and Mary Stock had been asked by police to call a number that was listed on Ms. Sumpter's phone bill for the night of the robbery after her phone had been stolen. (Id.) The motion was denied. (State v. Devine, No. ED79476, docket entry for June 6, 2002.)

Petitioner's appeal was rejected in a two-paragraph summary order. (Resp. Ex. H.)

Petitioner, represented by counsel, then moved for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, raising six claims. (Resp. Ex. J at 4-17.) Specifically, he was denied his constitutional rights, including due process and the right to the effective assistance of counsel, when (1) police officers "and/or prosecuting attorneys" withheld evidence of the inability of Ms. Sumpter and Mr. Tucker to identify him from a photographic lineup; (2) police officers pointed out his photograph and informed Ms. Sumpter that he was the man who had robbed her after she was unable to identify him as her assailant; (3) police officers "and/or prosecuting attorneys" withheld evidence that Donald Harris, an associate of Mr. Atkins, had attempted to sell the cell phone stolen from Ms. Sumpter to a man during calls placed from that phone immediately after the robbery; (4) Detective Morrell knowingly falsely and misleadingly testified that (a) he had not shown an array of photographs to Mr. Tucker, (b) Ms. Sumpter had

identified Petitioner from the photographic lineup based on her own memory and not on his coaching and instruction, and (c) he had not been able to determine who had placed the two calls from the stolen cell phone, although he had been told that it was Mr. Harris; (5) trial counsel had failed to conduct a reasonably thorough investigation and had consequently failed to (a) discover that Ms. Sumpter had been unable initially to identify any person from the photographic lineup and had selected Petitioner's photograph only after told he was her assailant, (b) discover that Mr. Harris had placed the two phone calls, had tried to sell the phone to a friend, and was Mr. Atkins' associate, (c) discover that another call from the cell phone shortly after the robbery had been placed to Mr. Atkins' in-laws, and (d) discover that another call had been placed to Mr. Atkins' step-daughter's residence; and (6) trial counsel had failed to depose Ms. Sumpter, thus losing an opportunity to establish before trial that she had been unable to identify Petitioner in the photographic lineup.  (Id. at 5-7.)

An evidentiary hearing was held at which Ms. Sumpter was called by Petitioner as a witness.  (Resp. Ex. I at 44.)  She testified that she had identified one person in the photographic lineup as her assailant, and that was Petitioner.  (Id. at 46-49.)  She also testified that she had been interviewed by a private investigator, Joe Adams, at the home of Mary Stock when Ms. Stock and Mary Rollins were present.  (Id. at 49-51, 56.)  He had asked about her picking Petitioner out of the photographic lineup; she told him she had picked out Petitioner, only Petitioner, and without any input from Detective Morrell.  (Id. at 52-54.)  She also told Mr. Adams that all black people looked alike to her, but she was

sure that Petitioner was the man who had robbed her. (Id. at 54, 61-62.) Mary Stock testified that Ms. Sumpter had told Mr. Adams in her presence that she was not able to identify Petitioner until the police officer told her which one to select. (Id. at 66, 69, 70, 72.) Ms. Rollins and Mr. Adams gave similar testimony. (Id. at 80-82, 89-90, 93-97.)

One of Petitioner's trial counsel testified that he never came across any information during his representation of Petitioner that led him to believe that the photographic lineup was done improperly. (Id. at 147.) The other trial counsel agreed. (Id. at 159.) Detective Morrell testified that he had asked Ms. Sumpter to view a photographic lineup and told her that the person who had robbed her may or may not be in that lineup. (Id. at 173, 176.) He did not suggest to her who she should pick out. (Id. at 173.) She did not ask until after she selected Petitioner's photograph whether the person she picked was the one that was in custody. (Id. at 181-82.)

The court denied relief, finding, in relevant part, as follows.

[Petitioner's] claim [that the police officers and/or prosecutor withheld evidence involving James Tucker and Charlene Sumpter] is equivalent to a prosecutor misconduct claim or a failure to comply with discovery, which can only be recognized in a direct appeal and not post conviction relief. . . . . The Court finds that this claim should have been addressed on direct appeal.

[Petitioner] alleges that police officers and/or prosecutor withheld evidence of James Tucker's inability to identify [Petitioner] from an array of photos. The Court also finds the record refutes this claim and [Petitioner] cannot demonstrate any prejudice . . . .

[Petitioner] alleges that police officers and/or prosecutor withheld evidence of Charlene Sumpter's inability to identify [Petitioner] from an array of photos. The Court finds that the record refutes this . . . . Charlene Sumpter stated she was positive on her identification . . . . . In addition, this Court

heard the testimony of Charlene Sumpter, Detective Morrell and both trial counsel at the evidentiary hearing. The Court finds their testimony to be more credible than any witnesses to the contrary. The Court finds that Charlene Sumpter's identification was based on her observations of the person who robbed her. The Court finds that Detective Morrell did not do anything improper to influence Charlene Sumpter's identification of [Petitioner].

The record in part, refutes th[e] claim [that police officers pointed out Petitioner's picture]. In addition, the Court observed the testimony of Charlene Sumpter and Detective Morrell at the evidentiary hearing. The Court finds that Charlene Sumpter's identification was based on her observations and that Detective Morrell did not influence her identification of [Petitioner]. . . . Looking at how [Petitioner] would prove this allegation, . . . he claims that [Petitioner] was photograph #5 and that the victim identified photograph #3 . . . [Petitioner] claimed that no police or prosecutor ever disclosed the information to [Petitioner] or his attorneys. This claim is equivalent to prosecutor misconduct or failure to comply with discovery, which can only be litigated on direct appeal. The Court finds that the record refutes this claim as the victim said that photographs **# 1** (emphasis added) [and] #5 look similar, but it was the person in #5 that robbed her. Nowhere does Charlene Sumpter identify photograph #3. . . . The Court finds the testimony of Detective Morrell and Charlene Sumpter to be more credible than witnesses to the contrary.

The Court finds that [the claim that police officers and/or prosecutor withheld evidence about Donald Harris] is equivalent to prosecutor misconduct or failure to comply with discovery, which can only be recognized in a direct appeal and not post conviction relief. Looking at how [Petitioner] would prove his allegations . . . he claims that Mr. Morrell and Mr. Myers determined from telephone records that 2 calls were placed from the victim's phone to David Perry's residence. However, state's exhibit 4, which is an affidavit and 2 pages from Sprint . . . show that only 1 call was made to the Perry residence. . . . Detective Morrell testified that it was he and Detective Neske that went to David Perry's residence, not he and Detective Myers . . . .

[Petitioner] claimed that (1) Mr. Morrell and Mr. Myers requested that Mary Stock and David Stock place phone calls, (2) that the phone calls were recorded, (3) Ms. Metz called and advised officers that Donald Harris placed the calls to the Brown residence and that Mr. Harris had attempted to sell the

phone to Mr. Brown[3]; (4) Mr. Harris is known to police officers as an offender; (5) Mr. Harris is an associate of Mr. Atkins; and (6) police or prosecutors never made these disclosures. . . . [Petitioner] failed to meet his burden [to establish ineffective assistance of counsel]. He failed to state that the witness [sic] would have testified if called and he failed to show how their testimony would have produced a viable defense.

The Court also finds that [Petitioner] cannot demonstrate any prejudice on these issues . . . . The Court recalls that Charlene Sumpter identified [Petitioner] as the person who robbed her. Terry Atkins also testified at trial that [Petitioner] was the person who robbed Charlene Sumpter. [Petitioner] also made statements to police. [Petitioner's] claim that the police/prosecutors did not make disclosures should have been raised on direct appeal and not in this post conviction proceeding.

. . . .

[Petitioner] states that the prosecutor failed to disclose evidence [that Detective Morrell could not determine the identity of the person who placed two calls], which is not recognizable in a Rule 29.15 hearing, only by direct appeal. Nevertheless, [Petitioner] is not entitled to relief because to be entitled to post-conviction relief he must allege facts, not conclusions, which if true, would entitle [Petitioner] to relief and the matters complained of must also be shown to be prejudicial to [Petitioner]. The Court does not find that any of [Petitioner's] claims or evidence undermines the Court's confidence in the results of the criminal trial. Detective Morrell testified that the residents at David Perry's house had amnesia, that they didn't remember anyone calling the house . . . . Detective Morrell also testified that [Petitioner] told him he didn't know David Perry . . . . Detective Morrell had two partners during this investigation, Detective Neske, at the beginning and Detective Myers later on . . . . [Petitioner's] statements to both detectives about the crime were admissible at trial . . . .

. . . .

The state did not adduce false testimony from its witnesses or withhold evidence. . . . [Petitioner's] witnesses were not credible and . . . the testimony of Detective Morrell, Charlene Sumpter, [and trial counsel] were credible.

---

[3]David Brown and David Perry are the same person. (Traverse at 4.)

(Resp. Ex. J at 30-36; interim citations to transcript pages omitted.)

Petitioner moved for a new trial, arguing that the court had erred in, inter alia, holding that his claims of police and prosecutorial misconduct and suppression of evidence were not cognizable in Rule 29.15 proceedings and that the court should grant him a new trial. (Id. at 37-41.) The motion was not ruled on within the ninety-day period prescribed by Missouri Supreme Court Rule 78.06 and was, therefore, overruled.

Petitioner appealed, arguing that the court had erred in (1) denying his claims of police misconduct without an evidentiary hearing because such claims, if proven true, would have shown that the "withholding, manipulation, and misrepresentation of evidence by one or more state officials" violated his right to a fair trial and due process and (2) sustaining the State's objection to the admission of the tape recording of Ms. Sumpter's interview with Mr. Adams. (Id. at 45; Resp. Ex. K at 23-24.)

Again, the appellate court rejected his arguments. (Resp. Ex. M.) Addressing Petitioner's first ground, the court held, in part:

> It has been widely recognized that allegations of prosecutorial misconduct or related allegations of discovery violations committed by the prosecutor are considered trial errors, which are beyond the scope of a Rule 29.15 motion. Generally, these are matters that should be raised on direct appeal and are not subject to review by way of post-conviction relief. However, there is an exception to this rule when fundamental fairness requires otherwise and then only in rare and exceptional circumstances.

> In this case, we do not find the facts warrant the relief requested because these are not "rare and exceptional circumstances." Our extensive review of the record on appeal and the record on direct appeal . . . reveals that [Petitioner] has not only had the opportunity to raise these issues prior to filing

his motion for post-conviction relief, but in fact, has raised these allegations on more than one occasion previously.

The evidence reveals after a jury convicted [Petitioner] in February 2001, the victim, Charlene Sumpter ("Sumpter") was interviewed by a private investigator in December 2001. Three witnesses to the interview prepared affidavits, which were filed in early February 2002. [Petitioner] filed his direct appeal on February 18, 2002, raising five issues on appeal. Without reiterating all five points, we note three of the five points on appeal suggest some sort of police and/or prosecutorial misconduct with respect to whether: (1) James Tucker was shown a photographic lineup, in contradiction to Detective Morrell's testimony; (2) the State altered the cell phone records during discovery or when presenting them during the trial; and (3) if the police impermissibly suggested [Petitioner] was Sumpter's attacker after she was allegedly unable to identify him from a photo array. . . .

Prior to oral argument before this Court in May 2002 for his direct appeal, [Petitioner] filed a *pro se* motion[4] alleging that "since his conviction, in the filing of this appeal," he had discovered the police taped telephone conversations during the course of its investigation but failed to disclose them to [Petitioner]. [Petitioner] also alleged he "discovered since the date of his conviction that [Sumpter] in a tape-recorded interview has disclosed that she was unable to identify the person who took her purse and [Petitioner] was pointed out by the investigative police officer with the statement that this is the person who took your purse." [Petitioner] attached the aforementioned affidavits. His motion for remand was denied. . . .

[Petitioner] was aware of the issues and has already taken two opportunities to litigate them. Therefore, we find the motion court did not clearly err in denying [Petitioner's] request for an evidentiary hearing on these matters. . . .

(Id. at 4-5.) Addressing Petitioner's second point, the court further found that the motion court had not erred in refusing to admit the tape-recorded statement. (Id. at 6.)

---

[4]This motion was filed on May 13, 2002, and was stricken for failure to comply with the appellate court's local rule on pro se filings. (See State v. Devine, No. ED79476 https://www.courts. mo.gov/casenet/cases/search Dockets.do). A second motion to remand was filed on May 31 by counsel.

Petitioner now seeks federal habeas relief on the grounds that:

> [His] conviction was obtained in violation of [his] rights to due process of law and the effective assistance of counsel because police officers or other state officials withheld, created, manipulated, or misrepresented evidence in [his] case, and because the state post-conviction motion court refused to grant an evidentiary hearing with respect to this claim and refused to admit into evidence and consider the robbery victim's tape recorded recantation of her prior testimony identifying [him] as her assailant.

(Pet. at 7.) Facts in support of this claim include allegations that (a) Ms. Sumpter identified photograph number 3 as that of her assailant until Detective Morrell pointed out Petitioner's photograph and told her that he was the culprit; (b) the motion court wrongly excluded Ms. Sumpter's tape-recorded statement based on the prosecutor's claims of surprise, although the prosecutor had known of the tape-recording for two weeks; (c) the police never disclosed that two calls had been made from Ms. Sumpter's cell phone after the robbery and that the calls were from Donald Harris, a known offender and associate of Mr. Atkins's; and (d) Mr. Tucker had been shown a photographic lineup, in contradiction to Detective Morrell's false testimony, and had been unable to identify Petitioner.

Respondent argues that relief should be denied because (1) the allegations of misconduct by police officers and the prosecutor should have been raised on direct appeal, were not, and are now procedurally barred, and (2) the claim that the motion court erred in not admitting the tape-recorded statement is not cognizable in a § 2254 proceeding. Petitioner counters that the rule barring claims of police officer or prosecutor misconduct

from being raised in post-conviction proceedings is not consistently and regularly enforced.

## Discussion

Title 28 U.S.C. § 2254(b)(1)(A) and the Supreme Court bar the granting of habeas corpus relief unless it appears that the state prisoner has exhausted available state court remedies.  See **Gray v. Netherland**, 518 U.S. 152, 161 (1996); **Coleman v. Thompson** 501 U.S. 722, 730 (1991).  "Because 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" **Id.** at 731 (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)); accord **Clay v. Norris**, 485 F.3d 1037, 1039 (8th Cir. 2007); **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007).  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." **Coleman**, 501 U.S. at 732.  "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court." **Id.**

"But 'only a firmly established and regularly followed state practice' is a procedural bar to federal habeas review." **Clay**, 485 F.3d at 1040 (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). "'[S]tate procedural rules not strictly or regularly followed may not bar [federal habeas review].'" **Id.** (quoting Dixon v. Dormire, 263 F.3d 774, 781 (8th Cir. 2001)) (first alteration in original); accord **Crawford v. Minn,** 498 F.3d 851, 854 (8th Cir. 2007); **Clark v. Caspari**, 274 F.3d 507, 510 (8th Cir. 2001).

Petitioner argues that the rule requiring claims of police officer or prosecutor misconduct to be raised on direct appeal is not consistently and regularly enforced, citing **Buck v. State**, 70 S.W.3d 440, 445 (Mo. Ct. App. 2000), and **Lee v. State**, 573 S.W.2d 131, 133 (Mo. Ct. App. 1978). In the former, the appellate court rejected the State's argument that the defendant's Brady[5] claim was not cognizable in a Rule 29.15 proceeding, holding that the defendant could not have raised the issue of the prosecutor's nondisclosure of a key witness's prior convictions on direct appeal because those convictions had not been presented to or considered by the trial court and, consequently, were not part of the record on appeal. **Id.** at 446. Not being part of the record, the appellate court could not consider it on direct appeal. **Id.** The court then concluded that the defendant's [inability to raise this nondisclosure at any point prior to the Rule 29.15 motion is *a rare and exceptional circumstance necessary for Rule 29.15 review of trial error*." **Id.** (emphasis added). In the second case, the appellate court reached the issue of misidentification in

---

[5] Brady v. Maryland 373 U.S. 83 (1963).

a post-conviction proceeding after a defendant pled guilty. **Lee**, 573 S.W.2d at 132-33. The victim had selected photographs of two men as her assailants and had also selected them in a lineup. **Id.** at 132. Two other men, including the defendant, were later identified by one of the first two men as the assailants. **Id.** Before identifying defendant in a preliminary hearing, the victim asked to see, and was shown, a photograph of him. **Id.** The earlier identifications were not disclosed to the defendant's trial counsel, nor was trial counsel told about the victim being shown defendant's photograph before she identified him during the preliminary hearing. **Id.** The appellate court held that the defendant was entitled to withdraw his guilty plea. **Id.** at 134-35.

Both cases are consistent with Missouri's courts's practice of reviewing "claims of prosecutorial misconduct in a Rule 29.15 proceeding when the alleged misconduct was serious and would not be apparent during the trial." **Tisius v. State**, 183 S.W.3d 207, 212 (Mo. 2006) (en banc). See e.g., **Middleton v. State**, 103 S.W.3d 726, 733-34 (Mo. 2003) (en banc); **McQuary v. State**, 241 S.W.3d 446, 453-54 (Mo. Ct. App. 2007) (alleged trial court errors may be addressed in post-conviction proceedings "if exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal") (internal quotations omitted); **Glasgow v. State**, 218 S.W.3d 484, 491-92 (Mo. Ct. App. 2007) (reaching merits in a Rule 29.15 appeal of defendant's argument that the State had failed to disclose favorable evidence).

Although Petitioner is correct that in certain circumstances post-conviction courts in Missouri have reached the merits of arguments that the State failed to disclose favorable evidence, those circumstances include that the State's misconduct was serious and was not apparent at trial.  See **Tisius**, 183 S.W.3d at 212.  The alleged misconduct at issue focuses on (a) Ms. Sumpter's identification of photograph number five; (b) two calls placed from her cell phone after the robbery; and (c) Mr. Tucker's identification of Petitioner.[6]  The alleged misconduct consists of (i) Detective Morrell telling Ms. Sumpter to select number 5; (ii) Detective Morrell knowing that the phone calls were placed by a known offender and associate of Mr. Atkins and included an attempt to sell the phone; and (iii) Mr. Tucker being shown a photographic lineup that included Petitioner's picture and not being able to select him.  The Achilles' heel of each is that there is no evidence to support such claims.  Detective Morrell and Ms. Sumpter testified at the post-conviction hearing that she selected Petitioner's photograph from the lineup without any input from the detective.  Trial counsel testified that they never learned of any evidence to the contrary.  Petitioner's continued allegations to the contrary do not contradict this evidence.  He might believe all four witnesses to be not credible; however, the state court found them so and this finding is presumed to be correct.  See **Thai v. Mapes**, 412 F.3d 970, 976 (8th Cir. 2005); **Perry v. Kemna**, 356 F.3d 880, 883 (8th Cir. 2004).  The state appellate court found that the evidence established that only one call had been placed to the Perry residence, that

---

[6]The other allegation, that the motion court erred in excluding a tape-recorded statement of Ms. Sumpter, will be addressed below.

Detective Morrell had gone to that house, and that its residents did not recall anything about a call. There is no evidence that Detective Morrell failed to disclose any additional, relevant information. And, there is no evidence that Mr. Tucker was shown a photographic lineup. Detective Morrell testified otherwise and the evidence was consistent that Mr. Tucker could not identify Ms. Sumpter's assailant. Mr. Tucker did not testify at the post-conviction hearing. Instead of coming forward with supporting evidence, Petitioner reframes arguments previously presented and rejected. Absent rare and exceptional circumstances, not present here, Missouri courts have consistently refused to entertain in post-conviction proceedings arguments which should have been raised on direct appeal. See **Rupert v. State**, 250 S.W.3d 442, 447 (Mo. Ct. App. 2008); **Purvis v. State**, 215 S.W.3d 745, 748 (Mo. Ct. App. 2007); **Williams v. State**, 205 S.W.3d 300, 307 (Mo. Ct. App. 2006). See also **Tisius**, 183 S.W.3d at 212 ("A freestanding claim of prosecutorial misconduct is generally not cognizable in a Rule 29.15 proceeding.").

Although Petitioner's misconduct claims are defaulted, their merits may still be reached if he can show cause and prejudice for his default, **Cagle**, 474 F.3d at 1099, or a miscarriage of justice, **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006).

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules.'" **Preston v. Delo**, 194 F.3d 908, 915 (8th Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration in

original).  To establish prejudice, the prisoner must "show that 'the errors of which he complains worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" **Carroll v. Schriro**, 243 F.3d 1097, 1102 (8th Cir. 2001) (quoting <u>Ivy v. Caspari</u>, 173 F.3d 1136, 1141 (8th Cir. 1999)).  Petitioner has not established prejudice.  Specifically, he has not established that Detective Morrell misrepresented his input into the photographic lineup shown Ms. Sumpter, that Ms. Sumpter lied about his input, that Mr. Tucker was shown a lineup, or that calls placed from her cell phone after the robbery would have exculpated Petitioner in any way.  On the other hand, the evidence that *was* before the state courts included Ms. Sumpter's unvarying identification of him as her assailant; the testimony of his witness, Mr. Atkins, implicating him; his ownership of the car used by the assailant; and his inculpatory remarks.  Petitioner may not have received "a perfect trial," but he has not shown that his complained-of errors denied him a fair trial.  <u>See</u> **McDowell v. Leapley**, 984 F.2d 232, 234 (8th Cir. 1993).  Because he has not shown prejudice, the Court need not reach the issue of whether he has shown cause for his default.

The merits of his defaulted claims may also be reached if Petitioner establishes that the failure to do so will result in a miscarriage of justice.  **Cagle**, 474 F.3d at 1099.  This requires the presentation of "new evidence that affirmatively demonstrates that [Petitioner] is innocent of the crime for which he was convicted."  **Abdi v. Hatch**, 450 F.3d 334, 338 (8th Cir. 2006). "The requirements to establish the requisite probability of innocence are

high." **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005). Petitioner has not presented such evidence.[7]

Petitioner also argues that he was denied his constitutional rights to due process and a fair trial when the motion court refused to (a) grant an evidentiary hearing on his allegations of prosecutor misconduct for not disclosing information about two calls placed after the robbery from Ms. Sumpter's cell phone and for not disclosing that Mr. Tucker was shown a photographic lineup and (b) admit into evidence a tape-recording of Mr. Adams's interview with Ms. Sumpter. This argument is not a cognizable § 2254 claim. See **Wiles v. Jones**, 960 F.2d 751, 754 (8th Cir. 1992); **Schlup v. Armontrout** 941 F.2d 631, 642 (8th Cir. 1991); **Williams-Bey v. Trickey**, 894 F.2d 314, 317 (8th Cir. 1990).

---

[7]Petitioner has alleged that there is a tape-recording of Mr. Adams's interview of Ms. Sumpter during which she stated that she was confused between the men shown in photographs number three and five until Detective Morrell told her the man in photograph number five, Petitioner, was her assailant. At best, this "would serve to potentially impeach [her's and Detective Morrell's testimony]." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). Given that Ms. Sumpter had testified at trial that she was initially confused between photograph number one, not number three, and photograph number five and that Petitioner's own witness and unrefuted statements implicated him, the tape-recorded statement given by a woman who testified that she felt harassed by the investigator, see Respondent's Exhibit I at 49-51, is not the type of new evidence that would show that "'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" **Osborne**, 411 F.3d at 920 (quoting Murray, 477 U.S. at 496).

**Conclusion**

For the foregoing reasons, Petitioner's claims of State misconduct are procedurally barred and his claims of constitutional violations in the State post-conviction proceedings are not cognizable in this § 2254 proceeding. Accordingly,

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Darrell Devine be **DENIED** without further proceedings.

The parties are advised that they have **up to and including November 17, 2008** by which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact. See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of November, 2008.